# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**MONG TRAN,**

        **Petitioner,**

    **v.**                                    **Civil No.: 1:25-cv-01598-JRR**

**NIKITA BAKER, *et al.*,**

        **Respondents.**

## MEMORANUM OPINION AND ORDER

Pending now before the court is Petitioner Mong Tuyen Thi Tran's Amended Petition for Writ of Habeas Corpus and Notice to Court of Additional Facts (ECF Nos. 16 and 17; together, the "Petition"), as well as Respondents'[1] Response thereto (ECF No. 22). Following expedited briefing by the parties, the court convened a hearing on the Petition on July 23, 2025.

## I.    Factual and Procedural Background

The record indicates the following:

### A.  About Petitioner

Petitioner was born in South Vietnam.[2] In 1993, she came to the United States as a child, accompanied by her family, and was admitted as a lawful permanent resident. (Pet., ECF No. 16 ¶ 8; Burki Decl., ECF No. 22-6 ¶ 6.) In 2001, while attending college and working in the United States, Petitioner was convicted in Fairfax County, Virginia on theft offenses for stealing money from her employer; she received a three-year sentence, all but four months suspended, and was ordered to pay restitution of $29,279.13. (Pet., ECF No. 16 ¶¶ 9, 18; Pet'r Decl., ECF No. 16-1 ¶

---

[1] Respondents are referred to herein collectively as the "Government."
[2] South Vietnam existed until 1975.

6; Burki Decl., ECF No. 22-6 ¶ 7; ECF No. 22-1.)[3]  U.S. Immigration and Customs Enforcement ("ICE") subsequently initiated removal proceedings against her, and she was eventually ordered removed to Vietnam on April 16, 2004.  (Pet., ECF No. 16 ¶ 20; Pet'r Decl., ECF No. 16-1 ¶ 6; ECF No. 22-3.)  At that time, however, the Socialist Republic of Vietnam (hereinafter, "Vietnam") was not accepting individuals removed from the United States.  (Pet., ECF No. 16 ¶ 20; Pet'r Decl., ECF No. 16-1 ¶ 6.)

When ICE did not effectuate Petitioner's removal as prescribed by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231, it issued an Order of Supervision ("OSUP").  (OSUP, ECF Nos. 16-2, 22-4; Pet., ECF No. 16 at p. 2; Burki Decl., ECF No. 22-6 ¶ 10.)  Petitioner complied with the OSUP for 21 years.  (Pet., ECF No. 16 at p. 2.)  When she reported to ICE's Enforcement and Removal Operations Office in Baltimore ("ERO Baltimore") on May 12, 2025, she was detained.  (Pet., ECF No. 16 at p. 2; Burki Decl., ECF No. 22-6 ¶ 11.)

Petitioner testified at the hearing (via Zoom) that when she was detained in Baltimore on May 12, 2025, an ICE officer provided her the Warning for Failure to Depart (Form I-229(a)) (Pet'r Hr'g Ex. 14) for which she signed;[4] the officer had her fill out a form detailing her biographical and family related data; the officer further interviewed her regarding whether she had a passport, a birth certificate, and the like; and he explained that ICE would seek (or had sought) travel documents for her.

Petitioner was served with a Notice of Revocation of Release, explaining that her OSUP had been revoked and that she was to be detained in ICE custody.[5]  (ECF No. 22-5; the "Notice of

---

[3] Petitioner was convicted of grand larceny by check, obtaining money under false pretenses, and uttering and delivering a forged check.  (ECF No. 22-1.)

[4] Her right index fingerprint was also affixed to the document.

[5] Petitioner asserted at the hearing, by oral argument and her testimony (via Zoom), that although her signature acknowledging receipt of the Notice bears the date May 12, 2025, in fact, she did not receive a copy of the Notice until July 1, 2025.  Although Petitioner understandably complains that this error was confusing and "problematic,"

Revocation of Release.")  The Notice of Revocation of Release provides as follows:

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On April 16, 2004, you were ordered removed to Vietnam with Thailand designated as the alternate country for removal.[6] Your case is under review by the Government of Vietnam for the issuance of a travel document to facilitate your removal from the United States.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

*Id.*  Prior to revoking Petitioner's OSUP and detaining her, ICE requested travel documents for her from Vietnam on April 8, 2025.[7]  (Burki Decl., ECF No. 22-6 ¶ 15.)

Petitioner testified she met with an ICE officer on June 25, 2025,[8] and again (with a different ICE officer) on July 1, 2025.  At this second meeting, Petitioner testified, she was given the Notice of Revocation of Release (bearing the date May 12, 2025), the officer read it to her and allowed her to read it; and she signed for it.  Petitioner testified that she also told the ICE officer that her Order of Removal did not identify Thailand as a third country – contrary to the portion of the Notice of Revocation of Release indicating that was the case.  The officer advised her she would be given another interview in one to three months to discuss her status, and that another

---

she concedes "it might not make a difference as long as she did get it at some point."  The court addresses this allegation in more detail below.
[6] The Order of Removal does not identify Thailand as a third party country.  The Government does not challenge that reference to Thailand in the Notice is an apparent error.
[7] In Fiscal Year 2025, Assistant Field Office Director Joseph C. Burki declares "ICE has requested travel documents in 247 cases involving Vietnamese citizens. In 200 cases, ICE obtained the necessary travel documents from the Government of Vietnam. Of those 200 cases, 131 entered the United States before July 12, 1995."  (Burki Decl., ECF No. 22-6 ¶ 15.)  As set forth above, Petitioner entered the United States in 1993.
[8] Petitioner testified the June 25 meeting was unhelpful because the ICE officer told her he was simply filling in that day and did not have information on her case.

meeting would be set up for her to talk with the Vietnam consulate regarding acquisition of travel documents.

According to Petitioner, she was in custody at ERO Baltimore when the instant Petition was filed on May 27, 2015.[9] (Pet., ECF No. 16 ¶ 10.) After her initial detention at ERO Baltimore, she was transferred to ICE detention facilities in Louisiana and Arizona. *Id.* As of July 1, 2025, she was detained at the Northwest ICE Processing Center in Tacoma, Washington. (Pet., ECF No. 16 ¶ 10; Burki Decl., ECF No. 22-6 ¶ 13.) As of the date of the hearing, Petitioner had been in ICE detention for 169 days (her period of detention from April 6, 2004, until issuance of her OSUP plus May 12, 2025, to the hearing date, July 23, 2025).

### B. Subsequent U.S. and Vietnam Relations

On January 22, 2008, the United States and Vietnam entered into a Repatriation Agreement. (ECF No. 16 ¶ 22; ECF No. 16-3; the "Repatriation Agreement.") While the Repatriation Agreement sought to "establish common procedures . . . to accept the return of repatriated citizens," it did not include a provision for Vietnamese citizens, like Petitioner, who arrived in the United States before July 12, 1995 ("the date on which diplomatic relation were re-established"). (ECF No. 16 ¶ 22; Repatriation Agreement, ECF No. 16-3 at pp. 1–2.)

Then, on November 21, 2020, the United States and Vietnam entered into a Memorandum of Understanding "to establish procedures on the prompt and orderly acceptance of Vietnamese citizens who have been ordered removed by U.S. competent authority and who arrived in the United States before July 12, 1995." (ECF No. 16-4; the "2020 MOU.") Its purpose, as identified, "is to establish a process of review and issuance of travel documents for Vietnamese citizens

---

[9] The Government does not challenge this assertion. The court thus concludes that it has proper jurisdiction over this action.

ordered removed from the United States and facilitate the acceptance of all such Vietnamese citizens." *Id.* § 1.

Pursuant to the 2020 MOU, Vietnam "intends to issue travel documents where needed, and otherwise to accept the removal of an individual subject to a final order of removal from the United States," where the individual:

> 1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;
>
> 2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);
>
> 3. Resided in Viet Nam prior to arriving to the United States and currently has no right to reside in any other country or territory.
>
> 4. [Redacted].

*Id.* § 4.

The 2020 MOU does not establish any right or entitlement of the U.S. to remove Petitioner to Vietnam, or any obligation of Vietnam to accept her on request of the U.S.; relatedly, the 2020 MOU does not afford any right or entitlement of any non-U.S. citizen whose country of origin is Vietnam to be repatriated to Vietnam.

## II.    Analysis

Pursuant to 28 U.S.C. § 2241(a), a district court may grant a writ of habeas corpus within its jurisdiction.  Petitioner asks this court to grant her Petition and order her released from "her unlawful physical custody by ICE" in violation of 8 C.F.R. § 241.13(i)(2).  (ECF No. 16 at p. 14.) The Petition does not include a challenge as to the sufficiency or basis of the Notice of Revocation of Release, or the Government's entitlement to revoke her OSUP generally – and makes no

mention of § 241.4 at all.  In order to clarify the issues before the court, at the hearing, the court inquired as to whether Petitioner includes as a basis for relief any challenge to the Government's revocation of her OSUP.  Petitioner's counsel expressly clarified that she does not challenge the Government's entitlement to revoke the OSUP or to detain Petitioner for a period to effectuate removal.  Later, Petitioner's counsel equivocated on this issue, suggesting the title of § 213.4 regarding "continued detention" might allow for argument that the section has no relevance to this action.  The court rejected that argument, and does so again here.  The text of § 213.4 expressly pertains, *inter alia*, to detention following revocation of an OSUP.  8 C.F.R. § 241.4(l).

The Government argues that § 241.13 does not apply inasmuch as the Notice of Revocation of Release expressly states that § 241.4 is the basis for the revocation; and advises that circumstances have changed such that Petitioner's removal to Vietnam may be expeditiously effected; and that, even were the court to evaluate the Petition under § 241.13, Petitioner is not entitled to habeas relief because she has failed to make an initial showing as required by § 241.13(a), and because, in any event, the Government has shown a significant likelihood of her removal to Vietnam in the reasonably foreseeable future.

The court evaluates the Petition under both § 241.4 and § 241.13.

To the extent Petitioner asserts that the Government did not have proper grounds and authority to revoke her OSUP, the court disagrees.  As a reminder, here, the Notice of Revocation of Release expressly cites (only) § 241.4 as the basis for the revocation of Petitioner's OSUP.

Pursuant to 8 C.F.R. § 241.4(l)(2), the Government may:

> [R]evoke release and return to [ICE] custody an alien previously approved for release . . . in the exercise of discretion when, in the opinion of the revoking official:
> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence

6

removal proceedings against an alien; or
(iv) The conduct of the alien, or any other circumstance, indicates
that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2)(i)–(iv).

The regulation permits the Government extraordinarily broad discretion to revoke an OSUP. Further, the regulation does not compel the Government to demonstrate what facts or factors, if any, it considered in deciding to revoke; nor does the regulation (or any other authority of which the court has been made aware) require the Government to demonstrate what, if any, steps it took to effect or secure removal prior to OSUP revocation. Importantly, however, as set forth above, prior to revoking Petitioner's OSUP and detaining her, ICE requested travel documents for her from Vietnam on April 8, 2025.

Per the Notice of Revocation of Release, the Government advised Petitioner that her changed circumstance is that ICE has determined she can be expeditiously removed pursuant to the order of removal and that her case is under review with the Government of Vietnam for issuance of a travel document. Petitioner has provided no authority on which to base a conclusion that such a level or degree of notice is insufficient pursuant to 8 C.F.R. § 241.4(l) or any other applicable regulation. Moreover, Petitioner testified that ICE met with her on July 1, 2025, at which the revocation was discussed generally, and during which she contested that Thailand was a proper third country; she was advised she would be given another interview as well as an interview with the Vietnam consulate in the following 1- to 3-month period. (That was 24 days ago as of this writing.) The Government posits that this July 1 meeting was the "informal interview" described in the Notice of Revocation of Release; Petitioner did not oppose or object to that assertion.

Title 8 C.F.R. § 241.13 "'establishes special review procedures for those aliens' who have

'provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.'" *Castaneda v. Perry*, 95 F.4th 750, 756 n.6 (4th Cir. 2024) (quoting 8 C.F.R. § 241.13(a)).

Section 241.13(a) sets forth the "scope" of the section as:

> This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

Subsection (b) applies to detention of non-citizens (like Petitioner) under a final order of removal unless ICE has determined "there is no significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(b). Subsection (i), on "revocation of release," provides:

> (i) Revocation of release—
>
> …
>
> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a

8

determination whether the facts as determined warrant revocation
and further denial of release.

*Id.* § 241.13(i).

As the First Circuit succinctly explained: "ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023); *see also Mohammed H. v. Trump*, No. CV 25-1576 (JWB/DTS), 2025 WL 1334847, at *6 (D. Minn. May 5, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954) (holding that "[a]n agency must also follow its own regulations"); and *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) (explaining that "[w]hile ICE does have significant discretion to detain, release, or revoke aliens, the agency still must follow its own regulations, procedures, and prior written commitments in the Release Notification")

Here, Petitioner fails to demonstrate or offer evidence on which a reasonable conclusion might be drawn that she presented to ICE "good reason to believe there is no significant likelihood of removal to Vietnam" per § 241.13(a); and, in any event, the court is satisfied at this time that ICE has drawn a reasonable conclusion that her removal to Vietnam in the reasonably foreseeable future is significantly likely based on the totality of circumstances including that ICE requested travel documents for her in April 2025, Petitioner's testimony that she was told to expect a meeting with the Vietnam consulate within approximately three months of July 1 for the purpose of acquiring travel documents, as well as Mr. Burki's sworn declaration that in fiscal year 2025: "ICE has requested travel documents in 247 cases involving Vietnamese citizens.  In 200 cases, ICE obtained the necessary travel documents from the Government of Vietnam.  Of those 200 cases, 131 entered the United States before July 12, 1995."  (Burki Decl., ECF No. 22-6 ¶ 15.)

9

Notwithstanding the foregoing, the court appreciates Petitioner's assertion that the duration of her detention is growing rather long in the tooth. The court, however, is not persuaded that Petitioner is yet entitled to habeas relief. Under the immigration statutes, "[e]xcept as otherwise provided . . ., when an alien is ordered removed, the Attorney General shall remove the alien . . . within a period of 90 days." 8 U.S.C. § 123l(a)(l)(A). That 90-day window, known as the "removal period," begins on "[t]he date the order of removal becomes administratively final." *Id.* § 1231(a)(l)(B)(i). Once the removal period closes, the INA sets forth two options for a non-citizen who was not removed during the removal period: an OSUP per § 1231(a)(3), or, for non-citizens who fall within three itemized categories, continued detention per § 1231(a)(6). Those three categories include, applicable here, non-citizens subject to a final order following multiple criminal convictions including for crimes of moral turpitude and an aggravated felony. *Id.* § 1231(a)(2)(A).

On its face, the INA does not limit the period of post-removal detention to which the Government may subject a non-citizen to effectuate removal. Because the prospect of indeterminate detention raises grave and obvious constitutional concerns, the Supreme Court has held that such a non-citizen "may be held in confinement for a period reasonably necessary to bring about that alien's removal" and post-removal period detention under 8 U.S.C. § 1231(a)(6) for six months or less, inclusive of the removal period, is "presumptively reasonable" (and therefore does not, on its own, result on constitutional injury). *Zadvydas v. Davis,* 533 U.S. 678, 683, 701 (2001).

Petitioner takes the position that the number of days she has spent in detention (adding together her removal period detention with her detention since May 12, 2025) warrants her release. Petitioner clearly explained at the hearing that she does not assert that the presumptively reasonable 6-month period (per *Zadvydas*) has passed (although nearly so); but, nonetheless, in

view of how much time has passed since ICE's April 2025 travel documents request, coupled with ICE's July 1 representation that it would arrange a meeting between Petitioner and the Vietnam consulate to take place in one to three months – the handwriting is on the wall that the Government is not going to secure her removal to Vietnam during the presumptively reasonable period. That may well be the case. Still, the court is not persuaded that substantiates grounds for habeas relief at this time.

The *Zadvydas* Court's analysis did not end with its pronouncement of a 6-month period of presumptive reasonableness. The Court further held:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701. Based on the record before the court at this time, the court is unpersuaded that Petitioner is entitled to relief on the grounds presented.

The court also addresses here, Petitioner's implicit argument that she has been constitutionally injured and is entitled to habeas relief due to the errors ICE committed regarding service of the Notice of Revocation of Release and the incorrect reference therein to Thailand as a third county. To be clear, ICE made mistakes, and the court shares Petitioner's frustration that a process already fraught with confusion and fear for the human being in Petitioner's position is only made scarier and more confusing by avoidable fumbles like these. Still, these errors do not entitle her to release from detention.

"[W]hen the judicial power to issue habeas corpus properly is invoked[,] the judicial officer

must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Boumediene v. Bush,* 553 U.S. 723, 787 (2008). Relevant here, "not every procedural misstep or difficulty raises anything like a constitutional difficulty." *Teng v. Mukasey,* 516 F.3d 12, 17 (1st Cir. 2008). To be sure, habeas is a proper vehicle "to challenge detention that is without statutory authority" or violative of the Constitution; however, it is "not a proper vehicle for vindicating every procedural error the Government may have committed along the way." *I.V.I. v. Baker,* Civ. Case 25-1572-JKB, Memorandum and Order at ECF No. 17 (D. Md. May 27, 2025) (citing *Zadvydas,* 533 U.S. at 687–88). Against this backdrop, the court evaluates the overall reasonableness of Petitioner's detention, not whether the Government was flawless in its execution. *Zadvydas,* 533 U.S. at 682; *Boumediene,* 553 U.S. at 793–94.

The court does not favorably evaluate the merits of the Petition at this time. To be clear, however, Petitioner is entitled to due process of law in the context of her detention and removal proceedings. Her detention may ripen into a meritorious habeas petition. It is not there today.

## III.   Conclusion and Order

For the foregoing reasons, it is this 24th day of July 2025,

**ORDERED** that the Petition shall be, and is hereby, **DENIED WITHOUT PREJUDICE**; and further it is

**ORDERED** that the Government shall not remove Petitioner from the United States for ten (10) days following entry of this order to allow Petitioner a reasonable opportunity to seek appellate review and to preserve and protect the jurisdiction of the Unites States Court of Appeals for the Fourth Circuit should Petitioner seek appellate review during this 10-day period. Nothing in this order shall be read to diminish or impair the period of time within which Petitioner may file a notice of appeal pursuant to the operative rules of court.

Madam Clerk is directed to **CLOSE THIS CASE**.

/S/

_____
Julie R. Rubin
United States District Judge